UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TODD RICHARD LONDON,

        Petitioner,

v.                                                           Case No. 13-C-426

JIM SCHWOCHERT,

        Respondent.

**DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

On April 17, 2013, Todd R. London filed this petition pursuant to 28 U.S.C. § 2254, asserting that his state court conviction and sentence were imposed in violation of the Constitution. London was convicted in Pierce County Circuit Court on two counts of first degree sexual assault of a child in violation of Wis. Stat. § 948.02 and was sentenced to 20 years imprisonment and 10 years of extended supervision. He is currently incarcerated at Dodge Correctional Institution. On May 7, 2013, the Court screened London's petition pursuant to Rule 4 of the Rules Governing § 2254 cases and allowed him to proceed on the claim that his postconviction counsel was ineffective in (1) failing to object to improper closing argument by the prosecutor, and (2) failing to claim that the trial court erred in allowing exhibits into the jury room. London also claims that the evidence was insufficient to support his conviction. The case has been fully briefed and is now ready for disposition. For the reasons that follow, London's petition will be denied.

## BACKGROUND

London was convicted of sexually assaulting his daughter Morgan on two separate occasions sometime in the summer of 2003 when she was twelve years old. Morgan's stepmother

Chana had allegedly been knocked unconscious by London just prior to the first assault and witnessed at least part of the second. Chana apparently never reported either incident, however, and was killed in an unrelated automobile accident in December of 2003. By the time of the trial in September of 2006, the only living witnesses with direct knowledge of the incidents were Morgan and her father.

Morgan's allegations of sexual assault first surfaced in 2005 from essays she wrote in a creative writing class which described inappropriate conduct. Her teacher apparently made a referral to the child protective services unit of the county human services department, and a social worker was assigned to investigate. Morgan initially denied that any inappropriate touching had occurred when questioned by the social worker and police, but in subsequent interviews she described the two incidents that formed the basis of the charges against London. At trial, Morgan testified that both incidents occurred in the summer of 2003. Morgan testified that the first incident occurred early in the summer the night before she and Chana went on a trip to New York. Morgan testified that she and Chana were home watching television when London returned home from his boat drunk. Chana went with London into the bedroom and Morgan later heard her screaming. She peaked through a crack in the bedroom door and saw her father knock Chana unconscious by striking her in the temple. Morgan then ran back into the living room and hid behind the couch. Her father came out of the bedroom, grabbed her by the hair and dragged her back to the bedroom where he raped her with Chana lying unconscious on the floor. When he finished, he went into the living room, and Morgan took Chana upstairs to her bedroom where she remained until morning. Morgan later went back downstairs to sleep on the couch in the living room. The following day, Morgan and Chana flew to New York.

Morgan testified that the latter of the two incidents occurred later in the summer when her father and Chana came home after a night out. Her father was drunk and was yelling at Chana. Morgan stated she was sitting on a couch watching television. Chana ran into the bedroom, and her father angrily followed. A short time later he came out and approached her. He proceeded to touch her underneath her shirt and underwear, choked and slapped her, and called her names. Chana then came out of the bedroom and told London to stop. He did and Morgan went upstairs to her bedroom.

The State's case rested primarily on the strength of Morgan's testimony, which it attempted to corroborate through other witnesses. Morgan's older brother Travis described Morgan's distraught emotional condition as she recounted what had occurred during a conversation they had at the end of the 2005–06 school year, and the social worker who interviewed Morgan described Morgan's initial denials and eventual recounting of the details of the incidents that led to the charges against London. Morgan's aunt also recounted a statement Morgan had made to her when she inquired about the allegations. London's relatives from New York who saw Morgan and Chana on their 2003 visit were asked to describe their appearance and demeanor during the visit. While London's mother, father, and sister did not recall any unusual behavior, Brian Romanowski, London's half-brother, testified that Morgan seemed a little distant and uncharacteristically objected to being tickled by him. Romanowski also testified that when he asked London if Morgan's allegations were true, London initially said he didn't know, but then denied it had occurred. None of the relatives who testified recalled seeing any marks or bruises on Chana or Morgan. Morgan's older brother, Travis, and her Aunt Martha also testified that Morgan eventually discussed the incidents of sexual assault with them.

3

In his defense, London testified that all the allegations were false, but he offered no explanation as to why his daughter had made them up. He and a friend also testified that he had broken one hand punching a door in a fit of anger after another man flirted with Chana at a bar and that he could not even use a paintbrush with that hand at the time the alleged incidents occurred. The trial lasted only two days, and the jury deliberated a little more than two hours before returning a verdict of guilty on both counts.

Through new counsel, London filed a motion for postconviction relief in the state circuit court in which he claimed his trial counsel was ineffective for (1) failing to introduce evidence to show why Morgan would fabricate sexual assault allegations; (2) failing to present expert testimony to contradict Morgan's claims of abuse and injury; (3) failing to present expert testimony on the significance of the delay in Morgan's reports of misconduct; and (4) failing to offer expert testimony from Dr. Harlan Heinz regarding the interview techniques and family structures that may have contributed to false allegations. London also asserted that he was entitled to a hearing on his postconviction motion and that the State's evidence was insufficient to convict him because Morgan's testimony was incredible as a matter of law and it was unsupported by physical or other corroborating evidence. (*State v. London*, Case No. 2009AP1952CR, Feb. 9, 2010, ECF No. 7-2.) The circuit court denied relief, and London represented himself on direct appeal.

The Wisconsin Court of Appeals rejected London's arguments and affirmed the judgment. (*Id.*) London then filed a postconviction motion pursuant to Wis Stat. § 974.06 challenging the effectiveness of his postconviction counsel. The circuit court denied the motion without granting a hearing and London appealed. The court of appeals noted that challenges to ineffective assistance of appellate counsel are properly raised in a petition for writ of habeas corpus pursuant to *State v.*

4

*Knight*, 168 Wis. 2d 509, 512–23, 484 N.W.2d 540 (1992), but nonetheless rejected the ineffective assistance of postconviction counsel claims London asserts here, among others, on the merits. (*State v. London*, Case No. 2011AP1260, Oct. 23, 2012, ECF No. 7-7.) London's federal habeas petition pursuant to § 2254 followed.

## LEGAL STANDARD

A federal court is authorized to grant habeas corpus relief to a state prisoner only upon a showing that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The granting of such relief by federal courts is further limited by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which "significantly constrain any federal court review of a state court conviction." *Searcy v. Jaimet*, 332 F.3d 1081, 1087 (7th Cir. 2003). Under AEDPA, habeas corpus relief for persons serving sentences imposed by state courts may not be granted on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In evaluating an application for habeas corpus pursuant to the judgment of a state court, facts determined by the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The applicant is burdened with rebutting the presumption of correctness by clear and convincing evidence. *Id.*

When determining whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law, lower federal courts must look exclusively to

Supreme Court precedent in reviewing habeas petitioners' claims. *Sweeney v. Parke*, 113 F.3d 716, 718 (7th Cir. 1997). Petitioners "must show that the Supreme Court has 'clearly established' the propositions essential to their position." *Mueller v. Sullivan*, 141 F.3d 1232, 1234 (7th Cir. 1998). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The state court decision involves an unreasonable application of such law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

### A. Ineffective Assistance of Post Conviction Counsel

Ineffective assistance of counsel deprives a defendant of his Sixth Amendment right to counsel and is therefore a proper ground for relief under 28 U.S.C. § 2254. To establish ineffective assistance of counsel, a defendant must show (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that counsel's errors affected the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Strickland* instructs that judicial scrutiny of counsel's performance is "highly deferential," and to fairly assess an attorney's performance, it is essential for a court "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "Because of the difficulties inherent in making the

6

evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* Here, to overcome the presumption that appellate counsel's decisions were sound trial strategy, London must prove that his appellate counsel failed to raise an issue that was both obvious and clearly stronger than the issues he did raise. *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (citing *Kelly v. United States,* 29 F.3d 1107, 1112 (7th Cir. 1994)); *Smith v. Robbins*, 528 U.S. 259, 288 (2000). To establish prejudice, London must prove that but for counsel's deficient performance, there is a reasonable probability he would have prevailed on direct review. *Smith*, 528 U.S. at 285–86.

### 1. Prosecutorial Misconduct

London's first claim is that postconviction counsel should have argued trial counsel was ineffective for failing to challenge the prosecutor's improper comments. London contends that during the prosecutor's closing argument, on several occasions he substituted his own testimony for that of the witnesses and improperly vouched for the witnesses' credibility. He also contends that the prosecutor attempted to testify for Chana, a deceased witness in violation of his right to confront the witnesses against him. London claims that his trial attorney's failure to object constitutes ineffective assistance of counsel on his part, and the failure of postconviction counsel to raise the issue in the motion for postconviction relief he filed on London's behalf likewise constitutes ineffective assistance of counsel.

In summarizing the defense's case, the prosecutor stated: "But the defense here is simply—although they won't come right out and tell you this— [the victim's] lying. That is the

7

only defense. Because if he didn't do it, then she has to be lying." (Trial Tr. at 308, ECF No. 7-15.) In discussing the emotion exhibited by Morgan and Travis on the stand, he stated: "There's no way that was fake." (*Id.* at 315.) The prosecutor later referenced the incident in which London had punched a door after a man flirted with Chana at a bar. In an apparent effort to argue that Morgan, and perhaps Chana, were afraid of London, the prosecutor noted that London punched the door as he left, and Chana did not come home the next day. After recounting this story, the prosecutor stated: "Do you really think when Chana got home the next day all it was was an, 'I didn't appreciate you doing that?' No way, I don't buy that for a minute, and I don't think you should, either. I bet she felt his wrath for a long time over that." (*Id.* at 317.) Additionally, in recounting that London's mother, father, and sister claimed Chana and Morgan did not have any bruises at the time of the New York trip, the prosecutor stated: "I'll be frank with you, I'm not sure they would have said if they did see anything . . . ." (*Id.*) London also claims it was improper for the prosecutor to state that Chana would have corroborated Morgan's testimony had she not passed away before trial. In his closing argument, the prosecutor stated: "And [defense counsel's] opening, he talked about, well, Morgan's unreliable. There's no witnesses, there's no other witnesses to corroborate what she says. There was. Unfortunately, she was killed in a car accident." (*Id.* at 308–09.) Later, in reply, the prosecutor added "I would have loved if Chana was still alive." (*Id.* at 354.)

"Improper vouching occurs when a prosecutor expresses [his] personal opinion about the truthfulness of a witness or when [he] implies that facts not before the jury lend a witness credibility." *United States v. Cornett*, 232 F.3d 570, 575 (7th Cir. 2000). *Darden v. Wainwright*, 477 U.S. 168 (1986), set forth the "clearly established Federal law" on the issue: "a prosecutor's

8

improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (quoting *Darden*, 477 U.S. at 181). Because the *Darden* standard is a very general one, courts are left with "more leeway . . . in reaching outcomes in case-by-case determinations." *Parker*, 132 S. Ct. at 2155. As a result, "multistep test[s]" adopted by the various circuits are not controlling. *Id.*

The Wisconsin Court of Appeals, in ruling on London's § 974.06 motion, held that when considered in context, the remarks were not so prejudicial as to deprive London of a fair trial. The court observed that the defense's strategy was to discredit Morgan's testimony and persuade the jury that she was lying, and it was therefore reasonable for the prosecutor to argue that Morgan should be believed. Further, the jury was instructed that the arguments of counsel were not evidence, and the jury is presumed to have followed the judge's instructions. (*State v. London*, ¶ 13, Case No. 2011AP1260, Oct. 23, 2012, ECF No. 7-7 (citing *State v. Olson*, 217 Wis. 2d 730, 743, 579 N.W.2d 802 (Ct. App. 1998)).)

Considering the context of the remarks and the *Darden* standard, the court of appeals' decision was not contrary to or an unreasonable application of clearly established federal law. This was not a case where the prosecutor suggested that he had knowledge of facts not in evidence that warranted the jury's acceptance of his assessment of the case. The prosecutor's rhetorical questions about whether the jury was buying this or that argument, and his statements concerning his own beliefs, might have been better expressed as arguments over what the evidence showed or did not show, but they were not so improper as to amount to a denial of due process. *See United States v. Hartmann*, 958 F.2d 774, 786 (7th Cir. 1992) (" The prosecutor's rhetorical question only sought

to point out how a potential prison term might affect Korabik's testimony."). The difference between the statement "I don't believe X", and the statement "I submit that the evidence shows that X is false" is too subtle to amount to a denial of due process. This is not a case where the prosecutor sought to put the prestige of his office behind his statement of personal belief. *See, e.g., Phelps v. Duckworth*, 757 F.2d 811 (7th Cir. 1985) ("He tried to kill this woman. Now, this case may be the most important thing you ever do in your lives for this community, and I wouldn't ask anybody to send anyone to prison for life unless I thought it was richly deserved, and unless I thought it was necessary for this community—."), *reh'd on other grnds.*, 772 F.2d 1410 (7th Cir. 1985) (*en banc*). To be sure, "[i]t is improper for a prosecutor to express his personal opinion on the merits of a case." *Id.* at 824 (citing *United States v. Rios*, 611 F.2d 1335, 1342–43 (10th Cir. 1979)). On the other hand, such opinion is implicit in almost any discussion and analysis of the evidence offered in an effort to convince a jury that a defendant is guilty.

To the extent the prosecutor expressed his personal opinion here, it does not amount to a violation of due process. *See United States v. Alexander*, 741 F.3d 866, 871 (7th Cir. 2014) ("A prosecutor may properly comment on the credibility of a witness so long as the comment reflects reasonable inferences from the evidence rather than personal opinion."). For example, the prosecutor's comments regarding Morgan and Travis's emotion on the stand came after the prosecutor described Travis's testimony. Travis had testified that Morgan came to him "freaking out" and described that she was unable to breathe at a normal pace while telling her story. The prosecutor argued that Travis's detailed account of his conversation with Morgan supported her credibility (Trial Tr. at 314, ECF No. 7-15); in other words, he argued that the jury should believe the testimony because it was rational to do so on the basis of the evidence, not because the

10

prosecutor had any greater insight into the witnesses's credibility than the jury. He explicitly said as much: "You are the sole judges of credibility . . . . Use your common sense and experience." (*Id.* at 313–14.) Similarly, in suggesting he did not believe London's testimony about how angry he must have been after the bar incident, the prosecutor situated his comment in the context of evidence before the jury. A police officer had testified that Morgan described instances of her father's violence to him, and based on this testimony, the prosecutor suggested that London may have responded with anger when Chana came home the next day. (*Id.* at 317.) The prosecutor's assertion that London's mother, father, and sister might not have reported bruises even if they saw them was also based on evidence. The prosecutor noted that on cross-examination, London's sister admitted she had never asked London about the allegations because she did not "want to know." (*Id.* at 318.) Thus, the prosecutor's suggestion that London's family might be less than forthcoming was based on the family's testimony, not on the prosecutor's own speculation.

The prosecutor forcefully argued based on the evidence that Morgan was a credible witness and understandably urged that the jury should therefore accept her testimony concerning the two incidents. This was entirely proper. Contrary to the prosecutor's argument, however, the jury did not have to conclude Morgan was lying in order to acquit London. Acquittal would also have been proper if they lacked sufficient confidence that she was telling the truth—if they were not convinced beyond a reasonable doubt that she was telling the truth. But making a bad or logically flawed argument is not the same as making an improper argument. The trial court properly instructed the jury on the presumption of innocense and the burden of proof, and London's attorney emphasized both in his own argument. In the context of the argument as a whole and considered

11

in light of the trial court's instructions, the state court's determination that London was not denied a fair trial was not unreasonable.

London's argument that the prosecutor argued that Chana, had she lived, would have corroborated Morgan's testimony is far more serious. "It is well-established that a prosecutor may not suggest to the jury that other evidence not introduced at trial supports a guilty verdict." *Phelps*, 757 F.2d at 823 (citing *United States v. Fearns*, 501 F.2d 486, 488–89 (7th Cir. 1974)); *see also United States v. Tucker*, 714 F.3d 1006, 1012–13 (7th Cir. 2013). But that is not what the prosecutor did in London's case. London's own attorney had suggested that it was convenient that Morgan had waited until after Chana's death to make her allegations so that there was no one to refute them: "But isn't it convenient for Morgan that she doesn't come forward until the one witness who could support her, could say all this stuff and do all this stuff. There's no disclosure until the one witness is not there, the one witness that can say that's not what happened." (Trial Tr. at 323, ECF No. 7-15.) It was in response to this argument that the prosecutor responded, "I would have loved [it] if Chana was still alive." (*Id.* at 354.) At no point, however, did the prosecutor suggest that Chana had actually corroborated Morgan's allegations before her death. In fact, London's attorney emphasized in his own closing that it was the failure of Chana to report the alleged conduct by London, among other things, that should cause them to doubt her version of the events:

> Chana sees all this happening, and she doesn't tell anybody, not a soul. Nobody comes forward, there's no evidence that Chana ever did anything. She just lets this go on? This protector and this angel? Unbelievable.

(*Id.* at 336.) Thus, the jury clearly understood that Chana never reported the incident, and the prosecutor never suggested otherwise. His argument, at most, was simply the observation that if Morgan was telling the truth, as he claimed the evidence showed, Chana would have been able to

12

corroborate her testimony had she not died in a car accident. There was no suggestion that he had any other basis for thinking Chana would have been a favorable witness to the prosecution.

Prosecutors "may strike hard blows," but not foul ones. *United States v. Young*, 470 U.S. 1, 7 (1985). Although the prosecutor could have exercised greater care in his choice of words, he did not misstate the evidence or suggest that he knew a fact not in evidence. To further quell any chance of confusion on the part of the jury, both the prosecutor and the judge reminded the jurors of their role in assessing credibility of witnesses. In sum, viewed in context, the statements were not such as to deprive London of a fair trial. At least, the decision of the Wisconsin Court of Appeals finding that they did not is not an unreasonable application of *Darden*. Accordingly, his claim that counsel was ineffective in failing to raise the issue in his motion for post conviction relief motion must fail.

**2. Jury Exhibits**

London asserts his postconviction counsel should have argued that the trial judge abused his discretion in allowing Morgan's writings to go to the jury room. Morgan had written three creative writing essays that referenced her father's misconduct and also gave a written statement to the police. The prosecutor argued that the writings should go to the jury because they provided Morgan's accounts of the incidents. Defense counsel objected, arguing that sending the writings to the jury room placed undue emphasis on the writings' contents. The judge admitted the exhibits over defense counsel's objection because they were referenced "incompletely and in pieces" throughout the trial. (Trial Tr. at 286, ECF No. 7-15.) London also asserts that the court should have given the jury a tape of his initial interview with police in which he denied any wrongdoing.

13

The trial judge denied London's request because he was concerned the jurors may inadvertently damage the tape. (*Id.*)

A state court's evidentiary errors do not normally entitle a defendant to habeas relief. Federal habeas relief is appropriate only if the erroneous evidentiary rulings were "so prejudicial that [they] compromise[d] the petitioner's due process right to a fundamentally fair trial." *Howard v. O'Sullivan*, 185 F.3d 721, 723–24 (7th Cir. 1999). "This means that the error must have produced a significant likelihood that an innocent person has been convicted." *Id.*

In ruling on London's § 974.06 motion, the Wisconsin Court of Appeals affirmed the trial court judge's view that the writings aided the jury in rendering a fair decision. The court noted that they contained evidence favorable to both sides, as defense counsel urged the jury during closing argument to note that Morgan never discussed rape in her writings and, in her journal entries, blamed herself and wished she could take back everything she said. (*State v. London*, ¶ 15, Case No. 2011AP1260, Oct. 23, 2012, ECF No. 7-7.) The court of appeals also held that it was unnecessary to send London's tape to the jury room because both the interviewing officer and London testified that he denied any wrongdoing. (*Id.* ¶ 16.)

In considering the trial judge's rulings and the case as a whole, this Court finds no cause to disturb the state court's evidentiary rulings and no authority to do so. The trial revolved around Morgan's credibility, and the writings were central to the State's case. In fact, Morgan indicated that it was easier for her to express herself in writing. (Trial Tr. at 125, ECF No. 7-14.) Given the central role of the writings, it was reasonable for the trial judge to ensure that the jury had a complete understanding of the writings' contents. The jury had heard substantial testimony regarding the writings, but as the trial judge noted, it was in "bits and pieces." The trial judge also

14

noted that although London and the attorneys in the case were familiar with the contents of the writings, the jury had not seen them because the courtroom lacked a projector. (Trial Tr. at 286, ECF No. 7-15.) Thus, by the time of closing argument, the jury's view of the exhibits was incomplete but the attorneys were familiar with the contents and could incorporate the writings into their arguments. Defense counsel took advantage of this opportunity when he noted that the writings did not mention rape. In sum, the trial judge's decision to send the exhibits to the jury room was reasonable, and defense counsel had a fair opportunity to persuade the jury that the writings did not support the State's case.

London also notes that the State failed to include the exhibits in its response to his petition. He states that he wants to reserve the argument that the exhibits contained information that was not the subject of testimony by witnesses and therefore should not have been given to the jury. (Pet'r's Br. at 19, ECF No. 16.) There is no requirement, however, that every line of an exhibit received into evidence be read in open court. Once an exhibit is received into evidence, its entire contents can be considered by the jury unless otherwise ordered. London's argument in the state courts was that it was improper to allow Morgan's writings to go to the jury but not send in his videotaped interview with the police where he denied the accusations. In other words, his argument was not that the writing were not fully admissible, but that it was unfair to allow the jury to view Morgan's writings without giving them London's videotaped denial at the same time. To the extent he now seeks to argue that the exhibits contained extraneous and prejudicial material, he has failed to present that claim to the state courts. It may not be raised for the first time in a federal action for relief under § 2254.

The court of appeals' determination that the trial judge did not err in denying London's request to send the tape to the jury was reasonable. It was undisputed that London denied the allegations initially to police and on the stand, which made the tape evidence cumulative. Both attorneys, on the other hand, had emphasized the contents of Morgan's writings and urged the jury to consider the contents in arriving at their verdict. The evidentiary decisions London challenges thus did not deny him the right to a fundamentally fair trial. Considering the claim's lack of merit and the deference afforded to trial judges in making evidentiary decisions, appellate counsel's decision to raise other issues was sound strategy.

**B. Sufficiency of the Evidence**

London's final argument is that the evidence was insufficient to convict him. He asserts that Morgan's testimony was incredible and that the State failed to present corroborating evidence. In recounting the first incident of sexual assault, Morgan testified that she saw a lump on Chana's head after London struck her in the temple. On cross-examination, however, she testified that the lump had disappeared the following morning. (Trial Tr. at 143, ECF No. 7-14.) Morgan also claimed that during the first incident, London beat her in the back with his fists and kicked her in the torso/rib area without leaving a mark. (*Id.* at 174.) In recounting the second incident, Morgan alleged that London choked her, punched her in the temple, and slapped her in the mouth causing her lip to bleed, yet no one testified to observing marks or bruises. (*Id.* at 151–52.) He contends these accounts "violate the laws of nature." He also asserts that unlike the State, he presented corroborating evidence in the form of witnesses who testified that Morgan and Chana were unharmed and that he suffered from a broken hand in the summer of 2003. As for the number of witnesses, parroting his attorney in closing argument, London quotes the Bible for the proposition

16

that it is unfair to convict someone of a crime on the testimony of just one person. (*See* Trial Tr. at 339 ("[O]ne witness shall not rise up against a man for an iniquity or for any sin, in any sin that he sinneth. By the mouth of two witnesses or by the mouth of three witnesses shall the matter be established.") (quoting *Deuteronomy* 19:15).)

The Supreme Court has held that the due process clause is violated if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt on the evidence presented. *Jackson v. Virginia*, 443 U.S. 307. 319 (1979). At trial, the prosecutor needed to establish that London engaged in sexual intercourse and sexual contact to prove the elements of the two counts. Wis. Stat. §§ 948.01, 948.02 (2001–02). On direct appeal, the Wisconsin Court of Appeals held that the evidence was sufficient because Morgan's testimony, if believed by the jury, established the elements of two counts of sexual assault. The court observed that Morgan's testimony was not incredible as a matter of law because it was not in conflict with the laws of nature or conceded facts, and it noted that it was the jury's function to determine the severity of the injuries and the ability of witnesses to observe and recall cuts or bruises. Additionally, the court noted that physical injuries were not elements of the offenses charged, and even if the jury doubted aspects of Morgan's testimony, it could believe the parts that related to the crimes charged. (*State v. London*, ¶ 12, Case No. 2009AP1952CR, Feb. 9, 2010, ECF No. 7-2.)

The court of appeals' decision was not contrary to or an unreasonable application of clearly established federal law. Morgan's testimony contained some inconsistencies with respect to her injuries and her actions following the assaults. The jurors could have viewed these inconsistencies as evidence that Morgan was lying, but they could also have viewed them as the product of the passage of time or the trauma she experienced. Morgan's testimony was consistent, however,

17

regarding whether London had engaged in intercourse with her and had inappropriately touched her. If the jury believed solely those aspects of her testimony, the evidence was sufficient to support a conviction. Additionally, although physical and corroborating evidence are available in some sexual assault cases, neither is required. Physical evidence may be available for only a short period of time following an assault, or there may be none at all, especially in a case involving inappropriate sexual contact rather than intercourse. It is also rare that sexual assault is committed in the presence of witnesses. To require physical or corroborating evidence in sexual assault cases would effectively grant perpetrators of sexual assault a license to commit crimes as long as they were careful enough to minimize the evidence.

The jury was confronted with two witnesses whose testimony was diametrically opposed. It is the function of the jury to determine the credibility of such witnesses. The court cannot say that no rational trier of fact, seeing what this jury saw and hearing the testimony this jury heard, could have found that London was guilty of two counts of sexual assault. Accordingly, his claim for relief under § 2254 must fail.

## CONCLUSION

London has failed to show that the alleged constitutional violations, considered individually or cumulatively, entitle him to relief. His petition for a writ of habeas corpus is therefore **DENIED**. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing Section 2254 Cases. The certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should

have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v McDaniel*, 529 U.S. 473, 484 (internal quotation marks omitted) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). If the court issues a certificate of appealability it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3).

London was convicted primarily on the basis of his victim's testimony, and reasonable jurists could debate the issues he raised concerning his conviction. The court therefore issues a certificate of appealability concerning all three of the issue addressed herein. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   8th   day of August, 2014.

s/William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court